IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Citadel Securities LLC, Group One Trading LP, Ronin Capital, LLC, Susquehanna Securities and Susquehanna Investment Group,<br><br>      Plaintiffs,<br><br>vs.<br><br>Chicago Board Options Exchange, Inc., International Securities Exchange, LLC, NASDAQ OMX PHLX (f/k/a Philadelphia Stock Exchange, Inc.), NYSE Arca, Inc. (f/k/a Pacific Exchange, Inc.), NYSE MKT LLC (f/k/a NYSE Amex LLC, f/k/a American Stock Exchange LLC),<br><br>      Defendants. | Case No. 13-cv-05833<br><br>Hon. Robert W. Gettleman |

## MEMORANDUM IN SUPPORT OF MOTION FOR REMAND

**I.    INTRODUCTION**

The Court should remand this action back to the Circuit Court of Cook County, Illinois because there is no basis for federal question subject matter jurisdiction. Plaintiffs Citadel Securities LLC, Group One Trading LP, Ronin Capital, LLC, Susquehanna Investment Group and Susquehanna Securities (the "Market Makers") filed their Complaint for Declaratory and Other Relief (the "Complaint") in the Circuit Court of Cook Country asserting five state law claims. The Market Makers do not allege any violation of any Exchange rule or federal law or regulation.

Defendants Chicago Board Options Exchange, Inc., International Securities Exchange, LLC, NASDAQ OMX PHLX, NYSE Arca, Inc., NYSE MKT LLC (the "Exchanges") argue, however, that this Court has exclusive subject matter jurisdiction pursuant

to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of the [Exchange Act] or the rules and regulations promulgated thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Securities Exchange Act of 1934] or the rules and regulations promulgated thereunder." 15 U.S.C. § 78aa. The Exchanges ignore the straightforward allegations of the Complaint and mischaracterize the nature of the Market Makers' claims.

Contrary to the Exchanges' mischaracterizations, the Market Makers do not assert that the Exchanges violated the Exchange Act or any rule promulgated thereunder. Nor do they seek to enforce any liability or duty created by the Exchange Act or any rules promulgated thereunder. There is not a single allegation in the Complaint that the Exchanges violated any rule or breached any duty arising out of any rule. To the contrary, the Complaint specifically alleges that the Market Makers "do not seek to enforce compliance with any Exchange rule or fee schedule." (Compl. at ¶ 8.)[1] Therefore, Section 27 does not apply and there is no basis for federal subject matter jurisdiction.

## II. BACKGROUND INFORMATION

The Market Makers are Exchange members who operate as market makers and specialists and, as such, execute options orders at the Exchanges. (Compl. at ¶ 2.) The Exchanges operated what they called "payment for order flow" programs ("PFOF Programs") for the purpose of increasing order flow to the Exchanges and, therefore, generating more revenue and profits for the Exchanges. (Compl. at ¶ 3.) In order to incentivize order flow providers, such as retail brokerage firms, to submit customer order flow to the Exchange, each Exchange

---

[1] A copy of the Complaint is attached hereto as Exhibit A.

assessed and collected fees on certain orders executed by the Market Makers and other participating market maker and specialists ("PFOF Fees") and paid those fees to the order flow providers. (Compl. at ¶ 4.) On July 16, 2013, the Market Makers filed the Complaint asserting that the Exchanges had improperly charged fees on orders that were never part of the PFOF Programs and, therefore, never subject to any PFOF Fees at all. (Compl. at ¶ 6.)

The PFOF Programs applied primarily to orders from public customers. Orders submitted by other market makers as part of their market maker business were never part of the PFOF Programs or subject to PFOF Fees, and orders submitted on behalf of a member's broker-dealer clients or on a member's own behalf were typically not part of the PFOF Programs or subject to PFOF Fees. (Compl. at ¶ 5.) The Exchanges nonetheless charged to and collected from the Market Makers PFOF Fees on orders that were never part of the PFOF Programs. (Compl. at ¶ 6.) The Exchanges do not and cannot dispute this fact. (Compl. at ¶ 1.) In late 2012, the Exchanges collected more than $6 million in penalties from a member firm that the Exchanges found had submitted proprietary and market-maker orders misidentified as customer orders over a seven-year period. (Compl. at ¶ 6.) The Exchanges had improperly charged the Market Makers PFOF Fees on these mismarked orders. (Compl. at ¶¶ 6-7.)

The Market Makers' Complaint asserts five state law causes of action, including (1) a declaratory judgment stating that the Exchanges are required to reimburse the Market Makers for improperly charged PFOF Fees that were assessed on orders that were never part of the PFOF Programs (2) an accounting of all PFOF Fees improperly charged to the Market Makers, (3) promissory estoppel, (4) restitution and (5) rescission. Notwithstanding the fact that the Market Makers did not assert any federal cause of action, the Exchanges filed a Notice of Removal on August 15, 2013.

**III.     ARGUMENT**

The Exchanges' removal of this action was improper because this Court lacks subject matter jurisdiction over this case. Removal is only proper if the case originally could have been brought in federal court either on the basis of diversity jurisdiction or federal question jurisdiction. 28 U.S.C. § 1441(a). If the district court lacks subject matter jurisdiction, however, the case must be remanded to state court. 28 U.S.C. § 1447(c). Courts should "interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Commonwealth Edison Co. v. IBEW, Local Union No. 15*, 961 F. Supp. 1154, 1159 (N.D. Ill. 1996). "Regardless of the jurisdictional basis asserted, '[t]he burden of establishing federal jurisdiction falls on the party seeking removal, and any doubt regarding jurisdiction should be resolved in factor of remand.'" *Jacobson v. Browne*, No. 11 C 4841, 2011 U.S. Dist. LEXIS 149631, *5 (N.D. Ill. Dec. 29, 2011) (quoting *XLS Specialty Co. v. Village of Schaumburg*, No. 06 C 2299, 2006 U.S. Dist. LEXIS 53942, *1 (N.D. Ill. July 20, 2006)). The Exchanges have not met their burden of establishing jurisdiction.

The Exchanges point to Section 27 of the Exchange Act, which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of the [Exchange Act] or the rules and regulations promulgated thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Securities Exchange Act of 1934] or the rules and regulations promulgated thereunder." 15 U.S.C. § 78aa. The Exchanges argue that Section 27 applies because the Market Makers' claims, although based on state law, are supposedly indirectly asserting violations of so-called "Exchange rules," which are in reality SEC-approved fee schedules, not actual Exchange rules.[2] The Exchanges' argument

---

[2] The fee schedules set forth the rates applicable to which types of orders. (Compl. at ¶ 24.)

4

fails for at least three reasons. First, the Market Makers do not allege that the Exchanges violated any Exchange rule. Second, the Markets Makers similarly do not allege that the Exchanges violated their fee schedules. Third, even if the Market Makers did allege a violation of fee schedules, such violation is not subject to exclusive federal jurisdiction.

    A.    **The Market Makers Do Not Allege That the Exchanges Violated Any Exchange Rules**

As the U.S. Supreme Court has acknowledged, a plaintiff is the "master of the claim," *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). Pursuant to the "well-pleaded complaint rule," a "federal question must be apparent on the face of the plaintiff's well-pleaded complaint." *Northeastern Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 890 (7th Cir. 2013). And, "a plaintiff who has both state and federal claims available my avoid federal courts by limiting his or her complaint to only state law claims." *Fedor v. Cingular Wireless Corp.,* 355 F.3d 1069, 1071 (7th Cir. 2004). As such, a plaintiff may "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar,* 482 U.S. at 392.

There is no question here that the Market Makers only assert state law claims. The Exchanges, however, try to avoid the implication of the "well-pleaded complaint rule" and assert that the Market Makers' claims are just "well-disguised federal claims." (Notice of Removal, at 4.) In doing so, the Exchanges attempt to invoke the "artful pleading" doctrine which provides that a plaintiff may not omit "necessary federal questions" from the complaint to avoid federal jurisdiction. *Northeastern Rural Elec.*, 707 F.3d at 890.

The Exchanges' reliance on the artful pleading doctrine, however, is not supported by the allegations in the Complaint. The Market Makers do not allege that the Exchanges violated any Exchange rule. Nor is it necessary for the Market Makers to allege that the Exchanges violated any Exchange rule. The Exchanges themselves do not cite to any

5

Exchange rule that the Market Makers are required to rely upon and have purportedly failed to cite. In other words, the Market Makers have not omitted a necessary federal question because there is no necessary federal question. The Market Makers' claim is a simple one – that the Exchanges charged PFOF Fees on orders that were not part of the PFOF Program.

The absence from the Market Makers' Complaint of any allegation of a violation of Exchange rules is underscored by the Exchanges' almost exclusive reliance on allegations in a complaint from an earlier proceeding which was voluntarily dismissed on July 16, 2013. (Notice of Removal, at 3-4.) The Exchanges' argument is improper: removal jurisdiction is based on the existing Complaint and reference to an earlier complaint is neither appropriate nor relevant. *See Prince v. Rescorp Realty,* 940 F.2d 1104, 1105 n.2 (7th Cir. 1991) ("'Federal courts base decisions about subject matter jurisdiction after removal on the plaintiff's complaint *as it existed at the time that the defendant filed the removal petition*.'") (quoting *Kidd v. Sw. Airlines, Co.,* 891 F.2d 540, 546 (5th Cir. 1990) (emphasis supplied)); *Price v. Highland Cmty. Bank,* 722 F. Supp. 454, 456 (N.D. Ill. 1989) (holding that federal jurisdiction depends on the facts and claims in the state court complaint at the time of removal).

The Exchanges' argument is also contradicted by scores of cases that have held that state law claims that implicate or overlap with an exchange rule do not give rise to exclusive federal question jurisdiction. For example, in *Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 55 (2d Cir. 1996), the Second Circuit concluded that the plaintiff's complaint against the New York Stock Exchange alleging several causes of action under New York law was not appropriately removed because, even though some of the plaintiff's claims involved violations of

NYSE rules, Section 27 "plainly refers to claims created by the Act or by rules promulgated thereunder, but not to claims created by state law."[3]

Similarly, in *Buckley v. Chicago Board Options Exchange, Inc.*, 109 Ill. App. 3d 462, 466 (1st Dist. 1982), the Illinois appellate court concluded Section 27 was not triggered by the plaintiffs' claim that the CBOE had violated its certificate of incorporation. The Court noted that the Exchange had correctly argued that the certificate of incorporation is an exchange rule. The Court, however, held that "[w]e find no merit to the CBOE's jurisdictional argument. It has been held that the exclusive jurisdiction provided under section 27 does not bar plaintiff from pursuing at his option remedies based solely on State law, even though the action may be based on the same factual circumstances." *Id*.

As these cases make demonstrate, even if the Exchanges' conduct implicates (or even violates) Exchange rules, the Market Makers are entitled to bring only state law claims, thereby falling outside Section 27's exclusivity provision. The Exchanges, however, ignore these cases and instead rely on three other cases to support their argument that this Court has exclusive jurisdiction over the Complaint despite the fact that the Market Makers only assert state law claims and do not assert any violation of Exchange rules. The Exchanges' cases, however, are inapposite and unpersuasive.

In *Sparta Surgical Corp. v. Nat's Assoc. of Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998), the court concluded that exclusive federal jurisdiction existed where the plaintiff sued NASDAQ for delisting its stock and temporarily suspending trading. Unlike the

---

[3] The Second Circuit also noted that "[t]he lack of a private right of action counsels against a finding of federal question jurisdiction." *Barbara*, 99 F.3d at 54. Here, the Exchanges will undoubtedly attempt to argue that the Market Makers have no private right of action to pursue a violation of Exchange rules.

present case, the court noted that the plaintiff "specifically alleged violations of exchange rules." *Id*. at 1213. The Market Makers, in sharp contrast, do not allege that the Exchanges violated any Exchange rules. The Exchanges attempt to sidestep this problem by arguing (incorrectly) that the Market Makers have implicitly asserted a violation of fee schedules. As discussed below, however, fee schedules are not rules, but are contracts between the Exchanges and its members. Moreover, in more recent decisions, the Ninth Circuit has clarified that allegations of conduct that violates exchange rules do not implicate Section 27 where the plaintiff only asserts claims arising under state law. *See, e.g., Lippitt v. Raymond James Fin. Serv., Inc*., 340 F.3d 1033, 1042 (9th Cir. 2003) ("But because [the plaintiff] challenges conduct solely under state law – irrespective of whether it is legal under SRO rules – his claims do not fit under Section 27.").

In both *Hawkins v. Nat'l Assoc. of Sec. Dealers Inc*., 149 F.3d 330, 331-32 (5th Cir. 1998) and *Lowe v. NASD Regulation, Inc*., No. 99-1751 (TFH), 1999 WL 1680653, at *2-4 (D.D.C. Dec. 14, 1999), also cited by the Exchanges, the court concluded that the plaintiffs' allegations that the defendant exchanges had breached duties owed to the plaintiffs in their role as an arbitrator constituted allegations that the exchanges violated certain federal securities laws. The Exchanges, however, do not and cannot point to any federal statute or regulation that the Market Makers allege that the Exchanges violated. Unlike the plaintiffs in *Hawkins* and *Lowe*, the Market Makers are not asserting that the Exchanges breached any duty owed to them arising out of an Exchange rule or federal rule – or even a fee schedule.

Moreover, the decisions in *Hawkins* and *Lowe* are isolated exceptions to the overwhelming weight of authority, none of which was cited by the Exchanges, finding that there is no federal jurisdiction over actions arising out of NASD (now FINRA) arbitrations. *See, e.g., AMRO Sage Corp. v. PTI Capital Mgmt., L.L.C.*, 2003 U.S. Dist. LEXIS 14375, at *6 (N.D. Ill.

8

Aug. 18, 2003) ("relief to stay arbitration is created by a private contract agreement under the rules of the NASD and . . . involves the mere interpretation of NASD arbitration rules. Such contract disputes are governed by state law, not federal law."); *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 259 (6th Cir. 1994) ("A breach of the NASD rules does not present a question that arises under the laws of the United States…"); *Smith Barney v. Painters Local Union No. 109 Pension Fund*, 1996 U.S. Dist. LEXIS 21889, at *8 (D. Neb. Aug. 6, 1996) (whether a claim is arbitrable depends on the interpretation of NASD rules, which does not give rise to federal question jurisdiction); *In the Matter of Prudential Sec. Inc.*, 795 F. Supp. 657, 658-59 (S.D.N.Y. 1992) ("NASD rules are established an enforced by private association and do not give rise to federal question jurisdiction"); *Lange v. H. Hentz & Co.*, 418 F. Supp. 1376, 1380 (N.D. Tex. 1976) ("a breach of NASD rules is imply a breach of a private association's rules" and "does not present a question which arises under the laws of the United States.").

  **B.**  **The Market Makers Do Not Allege That the Exchanges Violated Their Fee Schedules**

The Exchanges' argument that the Market Makers are implicitly asserting a violation of fee schedules has no merit. The Exchanges cannot point to a single allegation in the Complaint that even suggests that the Exchanges violated their fee schedules. To the contrary, the Market Makers allege that the Exchanges charged fees on orders that were never part of the PFOF Programs and, therefore, had nothing to do with the fee schedules. (Compl. at ¶¶ 43-45.) The Exchanges argue that these allegations would nonetheless require interpretation of the fee schedules. (Notice of Removal, at 3.) This is simply not true. There is no dispute that the mismarked orders were not part of the PFOF Programs and, therefore, not subject to the fee schedules at all. As such, there is no need for any "interpretation" of the fee schedules.

9

### C. The Exchanges' Fee Schedules Are Not Rules For Purposes of Rule 27

Even if the Market Makers' allegations could be misconstrued as asserting a violation of fee schedules, there is still no basis for federal jurisdiction. A fee schedule is a contract between an Exchange and its members, not a rule for purposes of Section 27. In *Graman v. Nat'l Assoc. of Sec. Dealers, Inc.*, No. 97-1556-JR, 1998 U.S. Dist. LEXIS 11624, *10 (D.D.C. Apr. 27, 1998), the court contrasted Municipal Securities Rulemaking Board Rule G-37, governing contributions to municipal securities issuers, with an NASD fee schedule. The court noted that "MSRB Rule G-37 operates not as a private compact among brokers and dealers but as federal law," while "NASD's fee schedule, on the other hand, does amount to 'a private compact,' and does not exercise the organization's core regulatory function." *Id*. (quoting *Ross v. Bolton,* 106 F.R.D. 315 (S.D.N.Y. 1984). Similarly, here, the Exchanges' fee schedules amount to a "private compact" between the Exchanges and their members, including the Market Makers, and do not in any way implicate the Exchanges' core regulatory function.[4] Therefore, even if the Complaint could be characterized as asserting a violation of the Exchanges' fee schedules, Section 27 of the Exchange Act does not apply and, as such, there is no basis to assert federal subject matter jurisdiction.

Moreover, even if the fee schedule could be labeled a "rule," numerous courts have held that the rules of the exchanges and other self-regulatory organizations do not give rise to federal question jurisdiction pursuant to Section 27 – even though such rules are subject to review by the U.S. Securities and Exchange Commission. For example, in *Jacobson v. Browne*, No. 11 C 4841, 2011 U.S. Dist. LEXIS 149631, *10-11 (N.D. Ill. Dec. 29, 2011), the district

---

[4] Indeed, the Exchanges' fee schedules are not found in the Exchanges' rule books or even the "regulatory portion" of their websites.

court rejected the defendants' argument that federal question jurisdiction existed because the complaint implicated FINRA rules. The court concluded that "[t]he problem with Defendants' argument is that while FINRA's rules and regulations are approved by the [SEC], they are not enacted by … Congress or the SEC. As such, even if FINRA's rules are implicated in this state law breach of contract action, which is not at all clear to the Court, that does not present a substantial federal question . . . ." *Id.*

Similarly, in *Apollo Prop. Partners, LLC v. Newedge Fin., Inc.*, No. H-08-1803, 2009 U.S. Dist. LEXIS 56018 (S.D. Tex. Mar. 20, 2009), the district court held that the plaintiff's claim that the defendant had violated a FINRA rule regarding suitability of investments did not give rise to federal jurisdiction pursuant to Section 27. The court explained that it was "persuaded by the ***great weight of authority that a breach of FINRA/NASD rules constitute a breach of a private association's rules but does not present a question arising under the laws of the United States*** within the meaning of § 1331." *Id.* at *6 (emphasis added)*;* s*ee also Ford.*, 29 F.3d at 259 (holding that, although the SEC had an opportunity to review NASD rules, "[a] breach of the NASD rules does not present a question that arises under the laws of the United States within the meaning of 28 U.S.C. § 1331…"); *Porter v. Shearson Lehman Bros. Inc.*, 802 F. Supp. 41, 61-63 (S.D. Tex. 1992) ("Section 27 omits the phrase 'rules of the exchange.' This Court agrees with Judge Friendly's opinion that 'by omission Congress intended that there be conferred on the federal courts exclusive jurisdiction only for the violation of rules developed under SEC authority and not the rules created under the dealer association authority'") (quoting *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir. 1966)); *Starkman v. Seroussi*, 377 F. Supp. 518, 523 (S.D.N.Y. 1974) (holding that "[rules] and regulations thereunder" refers to the SEC rules, not stock exchange rules); *Buckley*, 109 Ill. App.

3d at 466 (rejecting CBOE's argument that claim arising out of its SEC-approved certificate of incorporation was subject to Section 27's exclusivity provision).

Many of the decisions concluding that a violation of exchange rules does not fall within Section 27 are based on the contractual nature of exchange rules. For example, in *Barbara*, 99 F.3d at 54-55, the Second Circuit held that removal of the plaintiffs' claims asserting violations of New York Stock Exchange rules was not proper. The court explained "that 'the rules of a securities exchange are contractual in nature' … and are thus interpreted pursuant to ordinary principles of contract law, an area in which the federal courts have no special expertise." *Id*. (*quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109, 113 (2d Cir. 1990); *see also Petrie v. Pacific Stock Exchange, Inc*., 982 F. Supp. 1390, 1395(N.D. Cal. 1997) (holding that "the interpretation and investigation of the Exchange's rules does not confer federal question jurisdiction" because "[t]he rules of a securities exchange are generally considered to be contractual in nature and do not necessarily create a federal question"); *Prudential.*, 795 F. Supp. at 658-59 (finding Section 27 not applicable to claim arising out of NASD rules because "NASD rules are established and enforced by a private association and do not give rise to federal question jurisdiction"); *Lange*, 418 F. Supp. at 1380 (holding that the breach of NASD rules is simply a breach of a private agreement that does not confer jurisdiction under 28 U.S.C. § 1331).

Therefore, because the Market Makers have not alleged that the Exchanges violated their fee schedules or any Exchange rule and, in any event, the fee schedules are not rules for purposes of Section 27, there is no basis for subject matter jurisdiction.

IV. **CONCLUSION**

    For the reasons set forth above, the Market Makers respectfully requests that this Court enter an order remanding this action to the Circuit Court of Cook County, Illinois and award such other relief as is reasonable and just.

Date: September 16, 2013

Respectfully submitted,

Citadel Securities LLC, Group One Trading LP, Ronin Capital, LLC, Susquehanna Securities and Susquehanna Investment Group

By: /s/ Ellen M. Wheelerm
    Counsel for Plaintiffs

Stephen P. Bedell (No. 3125972)
Ellen M. Wheeler (No. 6244111)
Lori L Taylor (No. 6307157)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Fax: 312.832.4700