IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Citadel Securities LLC, Group One Trading )
LP, Ronin Capital, LLC, Susquehanna )
Securities and Susquehanna Investment )
Group, )
 )
   Plaintiffs, )
 )
  vs. )
 )  Case No. 13-cv-05833
Chicago Board Options Exchange, Inc., )
International Securities Exchange, LLC, )  Hon. Robert W. Gettleman
NASDAQ OMX PHLX (f/k/a Philadelphia )
Stock Exchange, Inc.), NYSE Arca, Inc. )
(f/k/a Pacific Exchange, Inc.), NYSE MKT )
LLC (f/k/a NYSE Amex LLC, f/k/a )
American Stock Exchange LLC), )
 )
   Defendants. )
 )

## REPLY IN SUPPORT OF MOTION FOR REMAND

### I. INTRODUCTION

   Citadel Securities LLC, Group One Trading LP, Ronin Capital, LLC,

Susquehanna Securities and Susquehanna Investment Group (the "Market Makers") do not

allege any violation of, or seek to assert compliance with, the Securities Exchange Act of 1934

(the "Exchange Act") or any rule or regulation promulgated thereunder. As such, there is no

federal question jurisdiction over this matter pursuant to Section 27 of the Exchange Act or 28

U.S.C. § 1331 and this matter should be remanded back to the Circuit Court of Cook County.

   Defendants Chicago Board Options Exchange, Inc., International Securities

Exchange, LLC, NASDAQ OMX PHLX, NYSE Arca, Inc., NYSE MKT LLC (the

"Exchanges"), in their Joint Memorandum of Law in Opposition to Motion to Remand (the

"Response"), do not and cannot point to any allegation asserting a violation of, or seeking to

enforce compliance with, the Exchange Act or a rule or regulation promulgated thereunder. Instead, the Exchanges attempt to argue that the Market Makers' claim is an attempt to enforce compliance with the Exchanges' own "rules" in the form of fee schedules. (Response, at 1, 4-5, 10-11, 14-15.)

This argument fails for at least three reasons. First, the PFOF fee schedules are *not* Exchange rules. Second, the Market Makers do *not* allege violations of, or seek compliance with, the PFOF fee schedules. Third, the rules of the Exchanges – particularly those that have nothing to do with the Exchanges' regulatory function, but instead relate solely to the Exchanges' private, for-profit business – do *not* constitute rules promulgated under the Exchange Act. Therefore, Section 27 does not apply, and there is no basis for federal subject matter jurisdiction.

## II. ARGUMENT

### A. The Fee Schedules Are Not Exchange Rules

The Exchanges' entire argument hinges on the fundamental fallacy that the PFOF fee schedules, which identify the amount of fees to be charged on various transactions, constitute Exchange rules. A fee schedule is not a rule; it is a contract between an Exchange and its members. *See Graman v. Nat'l Assoc. of Sec. Dealers, Inc.*, No. 97-1556-JR, 1998 U.S. Dist. LEXIS 11624, *10 (D.D.C. Apr. 27, 1998) (holding that NASD fee schedule is "'a private compact,' and does not exercise the organization's core regulatory function.") (quoting *Blount v. SEC*, 61 F.3d 938, 941 (D.C. Cir. 1994).

The Exchanges repeatedly point out that the fee schedules were created and amended through "proposed rule changes" reviewable by the SEC. (Response, at 2-4, 6, 11 and 13.) But even cases cited by the Exchanges acknowledge that SEC review is insufficient to

establish federal question jurisdiction.[1]  For example, in *Lowe v. NASD Regulation, Inc.*, No. 99-1751, 1999 U.S. Dist. LEXIS 19489, *11 (D.D.C. Dec. 14, 1999), the court noted that "[t]he Plaintiffs are correct in their assertion that ***federal question jurisdiction may not arise solely because the NASD rules are subject to review by and approval of the SEC***." (emphasis added). Moreover, the fact that the fee schedules are subject to SEC review is precisely where any perceived similarity to a rule ends.

The fee schedules are not even called "rules" by any of the Exchanges and they cannot be found in any of the Exchanges' rules books or within regulatory sections of their websites.[2]  The fact that the fee schedules are not part of the Exchanges' sets of rules distinguishes the PFOF Fees from the arbitration fees that are the subject of *Lowe*, 1999 U.S. Dist. LEXIS 19489.  The Exchanges cite to *Lowe* to support their argument that the fee schedules are rules.  (Response, at 11.)  In *Lowe*, however, the plaintiffs were challenging the imposition of certain arbitration fees that were expressly catalogued in and authorized by NASD rules.  1999 U.S. Dist. LEXIS 19489 at *6-7.  Unlike the NASD arbitration fees, the PFOF fees are not set forth in the Exchanges' rules.[3]

Furthermore, unlike *Lowe*, where the disputed fees were part of the NASD's core regulatory function to provide a forum for disputes between members and their customers, the PFOF Programs serve no regulatory or SEC-delegated function.  The purpose of the PFOF

---

[1] That the fee schedules were subject to SEC review speaks only to the fact that the Exchanges are regulated by the SEC.

[2] Indeed, if the Exchanges could identify even a single PFOF fee schedule during the relevant time period that appeared in any Exchange rule book, they surely would have cited it in their Response.

[3] Like the NASD, the Exchanges did include fees for core regulatory, SEC-delegated functions, such as arbitration fees, in their rule books.  *See, e.g.*, CBOE Rule 18.33 (setting forth a schedule for the imposition of arbitration filing fees).

4829-2696-1430.1

Programs is and was to attract order flow and generate revenue for the Exchanges as for-profit entities, *i.e.*, to increase the Exchanges' own bottom line. This distinction is important. In *Graman v. Nat'l Assoc. of Sec. Dealers, Inc.*, No. 97-1556-JR, 1998 U.S. Dist. LEXIS 11624, *10 (D.D.C. Apr. 27, 1998), the court contrasted Municipal Securities Rulemaking Board Rule G-37, governing contributions to municipal securities issuers, with an NASD fee schedule. The court noted that "MSRB Rule G-37 operates not as a private compact among brokers and dealers but as federal law," while "NASD's fee schedule, on the other hand, does amount to 'a private compact,' and does not exercise the organization's core regulatory function." *Id.* (quoting *Blount v. SEC*, 61 F.3d 938, 941 (D.C. Cir. 1994)). Similarly, here, the Exchanges' fee schedules amount to a "private compact" between the Exchanges and their members, including the Market Makers, and do not in any way implicate the Exchanges' core regulatory function.

The Exchanges attempt to distinguish *Graman,* arguing that it has "nothing to do with this case" because "the issue was whether Exchange Rules constitute state action…." (Response, at 12.) The fact that *Graman* was not decided on a motion to remand does not detract from its fundamental conclusion – that the NASD's fee schedule is not a rule. Regardless of the procedural context, the *Graman* court held that a fee schedule is not a rule. This Court should reach the same conclusion regarding the Exchanges' fee schedules.

In addition to the fact that they are not rules, do not appear in any rule books, and serve no regulatory function, the fee schedules differ from actual Exchange rules in another important aspect. Unlike Exchange rules, the fee schedules apply to both members and non-members. The CBOE's March 18, 2013 fee schedule, for example, indicates that fees are assessed against both members (trading permit holders) and non-members (non-trading permit

holders).[4]  Non-members are not regulated by the Exchanges and, therefore, the Exchanges have

no jurisdiction to pursue enforcement actions against them – a hallmark of the Exchanges'

regulatory function.  Indeed, to the extent a non-member failed to pay a required fee, the

Exchanges' only option would be to sue the non-member for breach of contract or some other

state law claim – *i.e.*, exactly what the Market Makers seek to do.

Because the fee schedules are not Exchange rules, there is no basis for federal

question jurisdiction pursuant to Section 27 of the Exchange Act (or 28 U.S.C. § 1331) and this

matter should be remanded to the Circuit Court of Cook County.

### B.     The Market Makers Do Not Assert a Violation of the Fee Schedules

Even if the fee schedules could be considered Exchange rules, there is still no

basis for federal jurisdiction because the Market Makers do not allege a violation of, or seek to

enforce compliance with, the fee schedules.  To the contrary, the Market Makers allege that the

Exchanges charged fees on orders that were indisputably never part of the PFOF Programs and,

therefore, had nothing to do with the fee schedules.  (Compl. at ¶¶ 43-45.)

The Exchanges advance the baseless argument that the parameters of the PFOF

Programs cannot be determined without "interpreting rules and fee schedules promulgated under

the Exchange Act to implement the programs" and, therefore, the Market Makers' claims are in

fact an attempt to enforce compliance with Exchange rules.  (Response, at 4.)  The Exchanges'

argument is meritless.  No interpretation is required of the fee schedules, much less any rules.[5]

In their Response, the Exchanges do not even attempt to dispute that the non-

customer orders were (a) never part of the PFOF Program or (b) improperly assessed PFOF Fees.

---

[4] A copy of this fee schedule is attached hereto as Exhibit A.

[5] Other than the fee schedules (which are not rules), the Exchanges do not identify a single rule that is in any way implicated by the Market Makers' claims or allegations.

The Exchanges cannot dispute that the orders were improperly charged PFOF Fees because the Exchanges' official disciplinary actions against the firm that submitted the incorrectly-marked orders already concede that point. Indeed, the disciplinary actions are *premised* on the fact that non-customer orders were improperly marked as customer orders. (Compl. at ¶¶ 35-41.) In the settled disciplinary actions, the Exchanges found that one of their member firms submitted huge numbers of non-customer orders (which were not subject to the PFOF fee schedule and ineligible for PFOF Fees) improperly marked as customer orders (which were ordinarily subject to the PFOF fee schedule and eligible for PFOF Fees). (Compl. at ¶¶ 35-43.) The Exchanges can scarcely require an "interpretation" of the PFOF fee schedules when they have already made the determination that the orders in question were not customer orders and, therefore, not part of the PFOF Program and not subject to the PFOF fee schedule.

Even if, for argument's sake, any "interpretation" of the PFOF fee schedules were required, it would be to ascertain whether the Exchanges have any valid defense to the wrongful charging of PFOF Fees. As the Seventh Circuit recently reaffirmed, "a federal defense does not suffice to support federal subject matter jurisdiction." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800-801 (7th Cir. 2013). In *Crosby*, the Seventh Circuit acknowledged that the state court would have to interpret the terms of a collective bargaining agreement to decide whether the plaintiff had a stated a valid claim for retaliatory discharge against his employer and that claims based on collective bargaining agreements arise under federal law. 725 F.3d at 797. The court nonetheless concluded that removal of the case was improper. *Id*. at 798. The Seventh Circuit explained its decision as follows:

> [T]he presence of a federal question…in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the

6

complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court."

*Id*. at 801, n.7.[6]

Perhaps recognizing that the weakness of their "interpretation" argument, the Exchanges devote a large portion of their Response to quoting superfluous snippets of a complaint in a previously filed and no longer extant lawsuit in an attempt to persuade this Court that the Market Makers' state law claims are really disguised claims to enforce compliance with rules. (Response, at 1, 3-4, 7-8, 10-11 and 13-14.)[7]  Whether or not this Court has jurisdiction must be based on the allegations in the present Complaint in this action, not a now-defunct complaint in a prior, no-longer-pending action.  *See Prince v. Rescorp Realty,* 940 F.2d 1104, 1105 n.2 (7th Cir. 1991) ("'Federal courts base decisions about subject matter jurisdiction after removal on the plaintiff's complaint *as it existed at the time that the defendant filed the removal petition*.'") (quoting *Kidd v. Sw. Airlines, Co.,* 891 F.2d 540, 546 (5th Cir. 1990) (emphasis supplied)).  The Exchanges attempt to justify their reliance on the defunct and irrelevant complaint, citing to *In re NASDAQ Market Makers Antitrust Litig*., 929 F. Supp. 174, 180 (S.D.N.Y. 1996).  (Response, at 13-14.)  In *NASDAQ*, however, the court was comparing two live complaints in two active lawsuits – a complaint on behalf of individual plaintiffs recently removed from state court with a consolidated class action complaint filed in federal court.  Here, in sharp contrast, the complaint on which the Exchanges so heavily rely is defunct.

---

[6] Indeed, under the Exchanges' theory, an Exchange could "federalize" just about any allegation of misconduct.  For example, an Exchange could unilaterally withdraw funds from a member's account, call the withdrawal a PFOF Fee, and then argue that any state law claim for conversion is really just an attempt to enforce Exchange rules.

[7] It is telling that the Exchanges' devote so much of their Response to a small handful of throw-away comments in a 24-page, 84-paragraph defunct complaint in a no-longer-pending lawsuit.

The defunct complaint is not merely irrelevant. Of equal importance, the isolated, cherry-picked quotations from the defunct complaint do not support the Exchanges' argument that the Market Makers' claims are in fact an attempt to enforce Exchange rules. The small number of superfluous references to violations of fee schedules or rules do not give rise to federal jurisdiction because the Market Makers were not (and are not) seeking to enforce compliance with Exchange rules. In *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1037, 1040-41 (9th Cir. 2003), the Ninth Circuit held that the district court improperly denied the plaintiffs' motion to remand even though "his complaint unnecessarily describes the alleged conduct of the defendants in terms that track almost verbatim the misdeeds proscribed by NYSE rules" and contained references to rule violations and resulting disciplinary actions. As in *Lippitt*, any references to rule violations in the defunct complaint were unnecessary. The Market Makers did not then and, more importantly, do not now seek to enforce compliance with any Exchange rules.

Because the Market Makers do not assert that the Exchanges violated the fee schedules or seek to enforce compliance with the fee schedules, Section 27 of the Exchange Act does not apply.

**C.    Violations of Exchange Rules Do Not Give Rise to Exclusive Federal Jurisdiction**

Even if the Market Makers' allegations could be deemed to be asserting violations of fee schedules and violations of fee schedules could be deemed to be Exchange rules, there is still no basis for federal jurisdiction. Section 27 provides that district courts have exclusive jurisdiction of "violations of the *[Exchange Act] or the rules and regulations promulgated thereunder*, and of all suits in equity and actions at law brought to enforce any liability or duty created by *[the Exchange Act] or the rules and regulations promulgated thereunder*." 15

8

U.S.C. § 78aa (emphasis added). The Market Makers do not assert a violation of, or seek to enforce any duty or liability created by, the Exchange Act or any rule or regulation promulgated thereunder.

Numerous courts, including courts in this District, have held that the rules of the exchanges and other self-regulatory organizations do not constitute rules promulgated under the Exchange Act and, therefore, do not give rise to federal question jurisdiction pursuant to Section 27 or 28 U.S.C. § 1331. *See, e.g.*, *Jacobson v. Browne*, No. 11 C 4841, 2011 U.S. Dist. LEXIS 149631, *10-11 (N.D. Ill. Dec. 29, 2011) ("[t]he problem with Defendants' argument is that *while FINRA's rules and regulations are approved by the [SEC], they are not enacted by … Congress or the SEC*. As such, even if FINRA's rules are implicated in this state law breach of contract action, which is not at all clear to the Court, that does not present a substantial federal question . . . .") (emphasis added); *AMRO Sage Corp. v. PTI Cap. Mgmt., L.L.C.*, 2003 U.S. Dist. LEXIS 14375, at *6 (N.D. Ill. Aug. 18, 2003) ("relief to stay arbitration is created by a private contract agreement under the rules of the NASD and . . . involves the mere interpretation of NASD arbitration rules. Such contract disputes are governed by state law, not federal law."); *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 259 (6th Cir. 1994) ("Notwithstanding that the [SEC] had an opportunity to review the NASD rule…, *[a] breach of the NASD rules does not present a question that arises under the laws of the United States* within the meaning of 28 U.S.C. § 1331…") (emphasis added); *Apollo Prop. Partners, LLC v. Newedge Fin., Inc.*, No. H-08-1803, 2009 U.S. Dist. LEXIS 56018, *6 (S.D. Tex. Mar. 20, 2009) (plaintiff's claim that defendant had violated FINRA suitability rule did not give rise to federal jurisdiction pursuant to Section 27 given "the great weight of authority that *a breach of FINRA/NASD rules constitutes a breach of a private association's rules but does not present a question arising under the laws of the*

9

*United States* within the meaning of § 1331.") (emphasis added); *Smith Barney v. Painters Local Union No. 109 Pension Fund*, 1996 U.S. Dist. LEXIS 21889, at *8 (D. Neb. Aug. 6, 1996) (whether a claim is arbitrable depends on the interpretation of NASD rules, which does not give rise to federal question jurisdiction); *Porter v. Shearson Lehman Bros. Inc.*, 802 F. Supp. 41, 61-63 (S.D. Tex. 1992) ("***Section 27 omits the phrase 'rules of the exchange*.*'*** This Court agrees with Judge Friendly's opinion that '***by omission Congress intended that there be conferred on the federal courts exclusive jurisdiction only for the violation of rules developed under SEC authority and not the rules created under the dealer association authority*"**) (quoting *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir. 1966)) (emphasis added); *In the Matter of Prudential Sec. Inc.*, 795 F. Supp. 657, 658-59 (S.D.N.Y. 1992) (Section 27 is not applicable to claim arising out of NASD rules because "***NASD rules are established and enforced by a private association and do not give rise to federal question jurisdiction*"**) (emphasis added); *Lange v. H. Hentz & Co.*, 418 F. Supp. 1376, 1380 (N.D. Tex. 1976) ("a breach of NASD rules is simply a breach of a private association's rules" and "does not present a question which arises under the laws of the United States.").

The Exchanges reject these cases out of hand, arguing that they are irrelevant because the defendants are private parties, not exchanges or other self-regulatory organizations. (Response, at 7.) This distinction is meaningless. The identity of the defendant has no bearing on whether exchange rules are rules promulgated under the Exchange Act. Furthermore, in this case, the Exchanges were operating, not in their capacity as regulators, but as private, for-profit businesses. (Compl., at ¶¶ 3, 15-18, 22.) In other words, for purposes of this case, the Exchanges are no different than the financial services firms and other private defendants in the

10

numerous cases where courts have held that allegations of exchange rules violations do not give rise to federal jurisdiction.[8]

Moreover, numerous courts have reached the exact same conclusion in cases where the defendant is an exchange or a self-regulatory organization. For example, in *Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 54-55 (2d Cir. 1996), the Second Circuit held that removal of the plaintiffs' claims asserting violations of New York Stock Exchange rules was not proper. The court explained "that 'the rules of a securities exchange are contractual in nature' … and are thus interpreted pursuant to ordinary principles of contract law, an area in which the federal courts have no special expertise." *Id.* (*quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109, 113 (2d Cir. 1990)).

The Exchanges argue, however, that the *Barbara* decision was limited by the Second Circuit's subsequent decision in *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93 (2d Cir. 2001).[9]  (Response, at 7.)  *D'Alessio*, however, only reinforces the fact that this matter belongs in state court.  In *D'Alessio*, the Second Circuit held that removal was proper because "the gravamen of D'Alessio's state law claims is that the NYSE and its officers

---

[8] Notably, the four cases cited by the Exchanges in support of removal were decided before the Exchanges demutualized, *i.e.*, transitioned from mutual associations of members to for-profit, publicly-traded companies.  *See* Reena Aggarwal & Sandeep Dahiya, *Demutualization and Public Offerings of Financial Exchanges*, 16 (Nov. 6, 2005), http://www. http://faculty.msb.edu/aggarwal/exchanges.pdf (providing chart showing that the Exchanges demutualized at or after mid-2001).

[9] Indeed, recognizing that the *Barbara* is fatal to their argument, the Exchanges go to great pains to try discredit the Second Circuit's decision, arguing that the court's conclusion as to the contractual nature of exchange rules is *dicta* and is unsupportable in light of subsequent decisions.  (Response, at 9-10.)  Both assertions are contradicted by the fact that *Barbara* continues to be cited for the very proposition expounded by the Market Makers – that exchange rule violations do not give rise to federal jurisdiction.  For example, in *Fiero Bros., Inc. v. Financial Industry Regulatory Authority, Inc.*, 606 F. Supp. 2d 500, 508-09, the court relied on *Barbara* to conclude that removal was not proper under Section 27.  The court explained that "[t]he Court need not decide, however, whether FINRA's contractual claim fits within the language of Section 27.  The Court of Appeals in this Circuit has already resolved this question.  Section 27 'plainly refers to claims created by the [Exchange] Act or by rules promulgated thereunder, but not to claims created by state law.'"  *Id.* (quoting *Barbara*, 99 F.3d at 55.)

conspired to violate the federal securities laws and various rules promulgated by the NYSE and failed to perform its statutory duty, *created under federal law*, to enforce its members' compliance with those laws." 258 F.3d at 101.

The Second Circuit contrasted D'Alessio's claims with those of the plaintiff's claim in *Barbara*. The Second Circuit explained that, in *Barbara*, "the plaintiff's claims required the district court to determine whether disciplinary proceedings initiated by the NYSE were consistent with its own internal rules and its contractual obligations to its members. As such, the claims required an examination of the various internal rules of the NYSE in accordance with well settled principles of contract interpretation -- a task uniquely within the province of state law." *Id*. Similarly, here, the Market Makers do not allege that the Exchanges violated any federal securities law or failed to perform a duty created under federal law. As in *Barbara*, the Market Makers' claims require at most an examination of fee schedules setting forth the parameters of internal Exchange programs established as part of the Exchanges' private business functions.[10] And, like *Barbara*, these fee schedules should be evaluated in accordance with well settled principles of contract interpretation – *i.e.*, state law.

*Barbara* is not the only decision involving an exchange defendant. In *Petrie v. Pacific Stock Exchange, Inc*., 982 F. Supp. 1390, 1395 (N.D. Cal. 1997), the court concluded that removal of an action against the Pacific Stock Exchange was not appropriate. The court held that "the interpretation and investigation of the Exchange's rules does not confer federal question jurisdiction" because "[t]he rules of a securities exchange are generally considered to be contractual in nature and do not necessarily create a federal question"). *Id*. The Exchanges argue., however, that *Petrie* is no longer good law in light of the Ninth Circuit's decision in

---

[10] As discussed above, however, no examination of the fee schedules is needed because the Exchanges do not and cannot dispute that the orders were not properly part of the PFOF Programs.

*Sparta Surgical Corp. v. Nat'l Assoc. of Sec. Dealers, Inc.*, 159 F.3d 1209 (9ᵗʰ Cir. 1998). (Response, at 6-7.) Yet, to the extent either of these decisions is no longer good law, it is *Sparta*.[11] Numerous decisions from other circuits have reached a different conclusion (*see supra* at 9-10), and the Ninth Circuit itself significantly tempered the bright line rule of *Sparta* in its later decision, *Lippitt v. Raymond James Fin. Serv., Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003).

In *Lippitt*, the court concluded that there was no federal question jurisdiction even though the alleged conduct by the defendant violated New York Stock Exchange rules. The court explained its conclusion as follows:

> In the case before us, the "dispositive question' is whether the Exchange Act provides "the exclusive cause of action" for false advertising and deceptive marketing claims against securities firms selling callable CDs? … If so, then the cause of action necessarily arises under federal law and the case is removable. If not, then the complaint does not arise under federal law and is not removable.

340 F.3d at 1042 (internal citation omitted). Because the court concluded that a state cause of action existed, the plaintiff's claims did not arise under federal law and removal was not proper. Similarly, here, the Exchange Act does not provide the exclusive cause of action for the wrongful charging of fees. Such misconduct gives rise to multiple state law causes of action, including the five set forth in the Market Makers' Complaint.[12]

---

[11] As discussed above and in the opening Memorandum, unlike in *Sparta*, the Market Makers are not asserting that the Exchanges violated any Exchange rule. In addition, in *Sparta*, the court was evaluating conduct undertaken by the NASD in its *regulatory* capacity as opposed to the present case, where the Exchanges' were operating exclusively in their private, *for profit business* capacity. Therefore, to the extent *Sparta* is even good law, it is easily distinguishable from the present case.

[12] In addition to *Sparta*, the Exchanges rely heavily on *Hawkins v. Nat'l Assoc. of Sec. Dealers Inc.*, 149 F.3d 330, 331-32 (5th Cir. 1998). As discussed in the Market Makers' opening Memorandum, however, *Hawkins* is both distinguishable (unlike the plaintiff in *Hawkins*, the Market Makers do not assert that the Exchanges breached a duty owed to them arising out of an Exchange rule) and of questionable precedential value in light of the numerous decisions holding that the NASD's conduct in connection with providing an arbitration forum does not give rise to federal question jurisdiction. (*See* cases cited on pages 8-9 of the Market Makers' opening Memorandum.)

The great weight of authority supports the conclusion that Exchange rules are not rules promulgated under the Exchange Act. This conclusion is particularly compelling where the so-called "rules" are actually fee schedules relating solely to the Exchanges' private, for-profit business function. In short, this dispute raised no questions about the Exchanges' performance of its regulatory functions; it is a straightforward dispute between private parties about money. Section 27 of the Exchange Act does not apply. Nor do the Market Makers' claims arise under the laws of the United States within the meaning of 28 U.S.C. § 1331. Therefore, there is no basis to assert federal jurisdiction over the matter.

## III.  CONCLUSION

For the reasons set forth above and in the Market Makers' Memorandum in Support of Motion to Remand, the Market Makers respectfully request that this Court enter an order (a) granting this Motion in its entirety and remanding this action back to the Circuit Court of Cook County, Illinois, and (b) granting such other and further relief as is reasonable and just.

Date:  November 8, 2013

Respectfully submitted,

Citadel Securities LLC, Group One Trading LP, Ronin Capital, LLC, Susquehanna Securities and Susquehanna Investment Group

By: /s/ Ellen M. Wheeler_____
        Counsel for Plaintiffs

Stephen P. Bedell (No. 3125972)
Ellen M. Wheeler (No. 6244111)
Lori L. Taylor (No. 6307157)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Fax:  312.832.4700

4829-2696-1430.1